# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN ROBERTS** : | |
| : | |
| : | **CIVIL ACTION COMPLAINT NO**. |
| Plaintiff, : | |
| : | **JURY TRIAL OF TWELEVE (12)** |
| : | **DEMANDED** |
| v. : | |
| : | |
| **TRANS UNION LLC** : | |
| : | |
| Defendants. : | |

## COMPLAINT

NOW comes the Plaintiff, Justin Roberts (hereinafter the "Plaintiff"), through their Counsel of record to make their allegations known against the Defendants by and through their complaint that alleges the following:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act)

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

3. Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Eastern District of Pennsylvania. Plaintiff sent a dispute letter to Transunion in the Eastern District of Pennsylvanis where the letter was processed by Trans Union and then an ACDV was sent to Great Lakes Education Loan Services, Inc. Venue is proper under 28 U.S.C. §1391(b)(1) due to the fact Trans Union has a major corporate office in the Eastern District of Pennsylvania and thus resides in the Eastern District of

1

Pennsylvania. Additionally, when Trans Union sent Great Lakes Education Loan Services, Inc. the ACDV in regard to Plaintiff's dispute of the Great Lakes Education Loan Services, Inc. account the dispute response was sent by Great Lakes Education Loan Services, Inc. to Trans Union's corporate office located in the Eastern District of Pennsylvania. Thus, venue is appropriate to Trans Union, LLC under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in the Eastern District of Pennsylvania.

## PARTIES

4. Plaintiff is a natural person and is a citizen of the United States. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, Trans Union, LLC, (hereinafter Trans Union) is a For-Profit Limited Liability Company registered to do business in Pennsylvania and with a registered agent in Pennsylvania. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d) to third parties. Based on information and belief, Trans Union's main corporate office is located in the Eastern District of Pennsylvania.

## FACTUAL ALLEGATIONS

6. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

7. Plaintiff's debt on GLELSI account # ****8581 arose from a student loan. The debt from this account was eliminated on or about November 30, 2016 which brought it current with a $0 balance. Plaintiff's debt obligation on GLELSI account # ****8581 ceased to exist on or before November 30, 2016.  Despite the debt related to GLELSI account # ****8581 being fully

eliminated on or before November 30, 2016, GLELSI continued to report an erroneous pay status of 120 days past due as of 11/03/2018.

8. TransUnion's report dated 11/03/2018 reported Plaintiff's GLELSI account with a current "Pay Status: 120 Days Past Due Date" even though Plaintiff's debt on this account ceased to exist on or before November 30, 2016.

9. Although Plaintiff's account had a zero balance, Plaintiff's Trans Union results dated 11/03/2018 reported the "Pay Status: 120 Days Past Due Date". It is impossible and incorrect for an account that is closed with a "0" balance to still be reporting as late as of 11/03/2018. Not only is the GLELSI account false on the face of the credit report but this reporting is extremely misleading because it makes it look like the Plaintiff is still late on this account that was previously brought to a zero balance.

10. As required by the Fair Credit Reporting Act, Plaintiff mailed a detailed and thorough dispute letter to Trans Union disputing the erroneous current pay status of 120 Days Past Due Date that GLELSI was reporting to Trans Union. Based on information and belief, Trans Union sent an ACDV to GLELSI to alert them of Plaintiff's dispute and give them the opportunity to investigate Plaintiff's dispute and correct or delete any incorrect data they were reporting to Trans Union. Instead of correcting the erroneous historical pay status they were reporting to Trans Union on GLELSI account # ****8581, GLELSI verified the inaccurate pay status to Trans Union and continued to report a historical pay status to Trans Union instead of a current pay status on Plaintiffs account with GLELSI. As a result of Plaintiff's dispute, GLELSI verified the current pay status of the account as accurate and instructed Trans Union to continue to report an inaccurate pay status of "Pay Status: 120 days past due". As a result of GLELSI unreasonable and lacking investigation, Trans Union continued to report the inaccurate pay status on Plaintiff's Trans Union

Credit Report at the instructions of GLELSI. Plaintiff's latest Trans Union credit report dated 11/03/2018 is currently reporting the same inaccurate pay status on the GLELSI account.

11. Based on information and belief, Trans Union has abandoned and been derelict in its duties under the Fair Credit Reporting Act and has not conducted its own independent investigation into Plaintiff's dispute of the GLELSI account.

12. Trans Union did not follow reasonable procedures to assure maximum possible accuracy and has been reporting false and inaccurate information even after it knew or should have known the information was incorrect.

13. GLELSI did not provide a good faith and reasonable investigation into the disputed current pay status on the account they report to Trans Union on Plaintiff. GLELSI's investigation was unreasonable and lacking because it failed to lead GLELSI to correct the inaccurate pay status they were reporting to Trans Union on Plaintiff. A reasonable investigation would have discovered they should be reporting the account to Trans Union as "was previously 120 days past due" or "Current, was previously 120 days past due".  If the account had been reported in either of these methods, it would have no longer been reviewed as a current past due obligation and would have had much less of an impact on Plaintiff's credit profile after two years from the date the account balance was eliminated. Instead the GLELSI account is being reported as a current past due obligation monthly.

15. Trans Union did not provide a good faith investigation into the disputed pay status of the GLELSI account. Based on information and belief, Trans Union did nothing more than parrot data from GLELSI in their investigation.

16. The GLELSI account is not only inaccurate, but it is also misleading, which the Third Circuit has addressed. The Third Circuit has agreed with other circuits that even if

information in a report is technically correct, it may still be inaccurate if, through omission, it "create[s] a materially misleading impression." *Seamans v. Temple University*, 744 F.3d 853, 865 (3rd Cir. 2014) (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). Further, the court in *Seamans* agreed that whether technically accurate information was "'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect'" is generally a question to be submitted to the jury. 744 F.3d at 865 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). *See also Hillis v. Trans Union, LLC*, 969 F.Supp.2d 419, 421 (E.D. P.A. Sept 18, 2013) (agreeing that "inaccurate" information, in the FCRA context, refers to information that either is factually incorrect or creates a misleading impression).

17. Trans Union has a statutory duty to have reasonable procedures to assure maximum accuracy. Their procedures regarding the reporting of current pay statuses are not assuring accuracy, much less maximum accuracy. Trans Union's lacking policies and procedures are continuing to allow data furnishers such as GLELSI, to report historical pay statuses where a current pay status is needed. This leads to an

18. The reporting of this inaccurate payment status on Plaintiff's credit report negatively reflects upon the Plaintiff, their credit repayment history, their financial responsibility as a debtor and their credit worthiness. The inaccurate pay status was furnished by GLELSI and reported by Trans Union, misrepresenting the payment rating and/or status of Plaintiff's account, and is currently being reported and reflected upon Plaintiff's most recent credit report, resulting in lowering Plaintiff's credit score and furthering and increasing Plaintiff's damages.

19. Plaintiff's credit reports, credit information and file formulated by Trans Union have been viewed by current and potential credit grantors and extenders of credit, as indicated by inquiries on each of their credit reports. The inaccurate information furnished by GLELSI and

reported by Trans Union is continuing to damage the Plaintiff's credit rating as well as their credit reputation.

20. As a result of Defendant, Trans Union's conduct, Plaintiff has suffered great physical, emotional and mental pain and anguish, all to Plaintiff's great detriment and loss.

21. As a result of Defendant's conduct, Plaintiff has suffered actual damages all to Plaintiff's great detriment and loss.

22. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

23. At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CAUSES OF ACTION

24. Plaintiff incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

25. This suit is based upon the Defendant's violations of the Fair Credit Reporting Act. All causes of action were the producing causes of damages which Plaintiff has suffered.

### COUNT I—VIOLATION OF THE FAIR REPORTING ACT

26. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

27. This suit is brought against the Defendant as the damages made the basis of this suit were caused by their violations of the FCRA. In all instances of violating the FCRA, Defendant

did so willfully and/or negligently. Under, 15 U.S.C. §1681n and §1681o, the Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees.

15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:

> (a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
> (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

And 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:

> (a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

### ***TransUnion's FCRA Violations***

28.     Trans Union violated their duty under 15 U.S.C. §1681i(a)(1)(A) to conduct a good faith investigation into Plaintiff's notice of dispute. Plaintiff requested Trans Union to reinvestigate the inaccurate reporting of the current pay status on their GLELSI account via detailed and thorough dispute letter specifically disputing the inaccurate current "Pay Status: 120 days past due".

29.     The dispute was detailed, thorough and informed Trans Union of all the relevant information regarding the inaccuracies of the accounts and provided enough information to show the accounts were being reported inaccurately. A portion of the dispute letter is reproduced below.

7

RE:    Justin Roberts



DOB
SSN    4603

Attn TransUnion Dispute Department:

      I am sending you this dispute letter on behalf of my client listed above. The following account has a balance of $0 with a late status. This is simply incorrect. If my client owes them no money and has no payments that are behind, then it is impossible for their current status to be listed as late. Please see below:

| Data Furnisher | Account Number | Status | Balance |
|---|---|---|---|
| USDOE/GLELSI | ****8581 | 120 Days Past Due | $0 |

      If this incorrect information is not removed or corrected from my client's credit report further action might be instituted under 15 U.S.C. § 1681. If necessary or required, we will obtain local and licensed counsel to aid in this matter. The data furnisher that we are disputing above has a lengthy history of FCRA violations, which can be proven by viewing PACER. Please let this serve notice that the information that they have in the past, as well as current credit data that they are providing you, is inaccurate and cannot be trusted. Please respond to this dispute by sending your investigation results to my law firm, McCarty & Raburn Law Firm, A Consumer Law Firm PLLC, 3000 Custer Road, Suite 270 #1501, Plano, TX 75075.

Sincerely,

Jonathan Raburn

30.    Trans Union did not conduct a good faith and reasonable investigation into Plaintiff's dispute. If they had, they would have discovered that GLELSI was reporting an incorrect historical pay status to them instead of an accurate current pay status. All the information Trans Union needed to determine this was in its own records and files. Based on information and belief, Trans Union forsook its duties under the Fair Credit Reporting Act and has not conducted its own independent investigation into Plaintiff's dispute of the GLELSI account. Trans Union simply parroted data from an ACDV sent to it by GLELSI. Based on information and belief, Trans Union

8

did not place one call or send one email investigating Plaintiff's dispute of the GLELSI account. Trans Union simply regurgitated data from the ACDV.

31.     The disputed account has a current pay status that is "Pay Status: 120 Days Past Due Date" even though Trans Union is currently reporting Plaintiff's accounts with a "$0" balance. It is impossible for Plaintiff to make "$0" payments to bring the account current. With this type of reporting, Plaintiff will never be able to bring the accounts current. A reproduction of the inaccurate reporting is seen below.

```
US DEPT. OF EDUCATION/GL #        2279****  ( 2401 INTERNATIONAL, POB 7859, MADISON, WI 53704, (800) 236-4300 )
We investigated the information you disputed and updated: Not specified. Here is how this item appears on
your credit report following our investigation.
Date Opened:      03/19/2012           Balance:         $0              Pay Status:   >Account 120 Days Past
Responsibility:   Individual Account   Date Updated:    11/30/2016                    Due Date<
Account Type:     Installment Account  High Balance:    $50,594         Terms:        $699 per month, paid
Loan Type:        STUDENT LOAN                                                        Monthly
                                                                       Date Closed:   11/30/2016
                                                                       >Maximum Delinquency of 120 days in
                                                                       03/2016 and in 11/2016<

Remarks: ACCT CLOSED DUE TO TRANSFER; TRANSFERRED TO ANOTHER OFFICE
Estimated month and year that this item will be removed: 11/2022
```

| | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | OK | OK | OK |
| | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | 12/2014 | 11/2014 |
| Rating | OK | X | X | X | X | X | X | X | X | X | X | X |
| | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 |
| Rating | X | X | X | X | X | X | X | X | X | X | X | X |
| | 10/2013 | 09/2013 | 08/2013 | 07/2013 | 06/2013 | 05/2013 | 04/2013 | 03/2013 | 02/2013 | 01/2013 | 12/2012 | 11/2012 | 10/2012 | 09/2012 | 08/2012 | 07/2012 |
| Rating | X | X | X | X | X | X | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| | 06/2012 | 05/2012 | 04/2012 | 03/2012 |
| Rating | OK | OK | OK | OK |

32.     Trans Union was notified and made aware of the specific issues from the dispute letter. It should have been easy for Trans Union to determine that the accounts were extremely inaccurate with the information that was provided.

33.     Trans Union is allowing the data furnisher, GLELSI, to report historical data within a data field for the *current status* of the account. When a *current status* code is used to report historical data, the credit scoring algorithm's treat the historical data as *current data*. The effect is obvious. The erroneous status decreases the consumer's credit worthiness by implying that the consumer is currently late on an existing obligation. In other words, if GLELSI would

have reported Plaintiff's GLELSI account as previously late on their loan—an accurate reporting, Plaintiff would not be here today.

34. The fact that Trans Union is currently reporting inaccurate information on Plaintiff's credit profiles/credit reports to the best of Plaintiff's information and belief, which are viewable and have been viewed by third parties, is proof that Trans Union did not conduct a reasonable investigation. If Trans Union would have thoroughly investigated the issues, they would have determined that the accounts were paid off, with a "$0" balance and still reporting as if Plaintiff is currently late and past due. If Trans Union had conducted a reasonable and good faith investigation they would have corrected or deleted the Plaintiff's accounts that are inaccurate and misleading.

The section entitled "Procedure in case of disputed accuracy" under 15 U.S.C. §1681i(a)(1)(a) reads:

> (a) Reinvestigations in case disputed information
>
> (1) Reinvestigation required
>
>> (A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And:

15 U.S.C. §1681i(a)(5) reads:

> (5) Treatment of Inaccurate or Unverifiable Information
>
> (A)*In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

   (i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

   (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

35. Trans Union is currently violating 15 U.S.C. §1681e(b), by not following reasonable procedures to assure maximum possible accuracy. If Trans Union was complying with 15 U.S.C. §1681e(b), it would place a filter or formula in its reporting system that would suppress or block accounts with a zero balance from being reported with a current status of past due or late.

36. Plaintiff's debt on the GLELSI account was fully eliminated, but Trans Union continued to report the accounts with a late/past due status. If Trans Union had reasonable procedures, they would not allow an account to report as though the account is currently past due, with a "$0" balance. This simply makes no logical sense. Trans Union should be reporting the account as "current" or was "previously past due" and not "past due." These accounts are reporting as though the Plaintiff is currently past due each month. With this type of reporting, Plaintiff will never be able to make their account current. Trans Union lacks the procedures to avoid such faulty reporting. Trans Union knows that this account was paid, however, they continue to report a current status as past due.

15 U.S.C. §1681e(b) reads as follows:

  (a) Accuracy of the Report

  Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates.

37. Trans Union has been on notice that reporting an account with a $0 balance and a

late status is not accurate. Trans Union was a co-defendant in *Macik v. JPMorgan Chase Bank, N. A., et al.*: U.S. District Court for the Southern District of Texas, Galveston Division (Case 3:14-cv-44). Plaintiff's Counsel filed suit against Transunion, Equifax and JPMorgan Chase bank in Galveston, Texas, alleging that they were reporting her pay status as 90 days past due, with a zero ($) balance, even though the account was paid off five years earlier. Macik lost a home loan because the program that is used in determining eligibility specifically stated that her Chase account was late two or more times in the last twelve months, even though the loan it was referring to was paid in full five (5) years earlier.

38.     The Macik jury determined that reporting an account with a $0 balance, and a current late pay status, is not only inaccurate, but a willful violation of the FCRA. Trans Union knows this because they were a co-defendant and had counsel present when the jury verdict was rendered as well as receiving an ECF copy of the ruling.  Even though this verdict was from an outside circuit, Plaintiff cites it simply to show that this inaccurate reporting is an issue that not only should be determined by a jury, but that, in fact, a jury has already returned a verdict on the issue deeming this type of reporting as inaccurate and a willful violation of the FCRA.

### *Third Parties have viewed Plaintiff's Trans Union Credit Report*

39.     The negative tradeline(s) reported by GLELSI on Plaintiff's Trans Union Credit report have been viewed by third parties all to the detriment and loss of the Plaintiff.

40.     Plaintiff has suffered actual harm due to Trans Union still reporting the negative tradeline provided by GLELSI on Plaintiff's Trans Union report even though Trans Union was put on notice of the inaccurate negative reporting through Plaintiff's dispute letter.

41.     The conduct of the Defendant was the direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are

outlined above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

42. Even after being put on notice through Plaintiff's dispute letter, GLELSI continued to report historical data within a data field for the *current* status of the account. When a *current status* code is used to report historical data, the credit scoring algorithm's treat the historical data as current data. The effect is obvious. The erroneous status decreases the consumer's credit worthiness by implying that the consumer is currently late on an existing obligation. In other words, if GLELSI, would have reported Plaintiff's GLELSI account as previously late on their loan—an accurate reporting, Plaintiff would not be here today.

43. GLELSI willfully and negligently supplied the credit reporting agencies with information about Plaintiff that was false, misleading, and inaccurate.

44. After receiving notice of Plaintiffs dispute, GLELSI willfully and negligently failed to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed and continued reporting the inaccurate information to the credit bureaus.

45. By failing to conduct a reasonable investigation into Plaintiffs disputes, GLELSI negligently violated § 1681s-2(b).

46. Alternatively, by willfully failing to conduct a reasonable investigation GLELSI willfully violated § 1681s 2(b).

**Industry Guidelines cannot negate Defendant's obligations under the FCRA**

47. The Defendant cannot rely on their industry guidelines as a defense in this matter. Please see *EMILY COULTER, Plaintiff, v. CHASE BANK USA, N.A., Defendant."* We agree with Plaintiff that Defendant may not use these guidelines as a defense here. Notably, Defendant does

not cite to any legal authority for the proposition that adherence to these industry guidelines shields it from FCRA liability. (*See* ECF No. 86 at 15-16.) Indeed, the relevant case law plainly runs counter to this argument. *See, e.g.*, *Florence v. Cenlar Fed. S&L*, No. 16-587, 2018 U.S. Dist. LEXIS 34151, at *20 (D. Nev. Mar. 1, 2018) ("industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA."); *Burrows v. Experian Info. Sols., Inc.*, No. 16-6356, 2017 U.S. Dist. LEXIS 39845, at *21-22 (N.D. Cal. Mar. 20, 2017) ("FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards."). <u>EMILY COULTER, Plaintiff, v. CHASE BANK USA, N.A., Defendant.</u>, No. CV 18-1538, 2020 WL 5820700, at *12 (E.D. Pa. Sept. 30, 2020)

48. The negative tradeline(s) reported by GLELSI on Plaintiff's Trans Union Credit report have been viewed by third parties all to the detriment and loss of the Plaintiff.

49. Plaintiff has suffered actual harm due to Trans Union still reporting the negative tradeline provided by GLELSI on Plaintiff's Trans Union report even though Defendant was put on notice of the inaccurate negative reporting through Plaintiff's dispute letter.

50. The conduct of Defendant was the direct and proximate cause, as well as, a substantial factor in bringing about the serious injuries, damages and harm to Plaintiff that are outlined above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, statutory, compensatory and punitive damages, as well as, such other relief, permitted by law.

## **DEMAND FOR JURY TRIAL**

51. Plaintiff demands trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants based on the following requested relief:

14

a. Actual damages pursuant to 15 U.S.C. §1681;

b. Statutory damages pursuant to 15 U.S.C. §1681;

c. Punitive damages pursuant to 15 U.S.C. §1681;

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o; and

e. Such other and further relief as may be necessary, just and proper.

Respectfully submitted,

BY: */s/ Matthew Weisberg*  
MATTHEW B. WEISBERG, ESQ  
WEISBERG LAW  
Attorney ID No. 85570  
7 South Morton Ave. 19070  
Morton, PA  
610-690-0801  
Fax: 610-690-0880  
DATED: 11-2-2020

BY: */s/ Gary Schafkopf*  
GARY SCHAFKOPF, ESQ  
SCHAFKOPF LAW, LLC  
Attorney ID No. 83362  
11 Bala Ave  
Bala Cynwyd, PA 19004  
610-664-5200 Ext 104  
Fax: 888-238-1334  
DATED: 11-2-2020